UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEPHEN J. HOPKINS,<br><br>    Plaintiff,<br><br>  v.<br><br>DENNIS J. DUCKETT, MICHAEL R. D'APPOLONIA, KEVIN I. DOWD, HOWARD S. HOFFMANN, AND NIGHTINGALE & ASSOCIATES, LLC,<br><br>    Defendants/Third-Party Plaintiffs,<br><br>  v.<br><br>STEPHEN HOPKINS ASSOCIATES, INC.,<br><br>    Third-Party Defendant. | Civil Action No. 02-5589 (JCL)<br><br>**MEMORANDUM & ORDER** |

**LIFLAND, District Judge**

  Before the Court is the appeal of Plaintiff Stephen J. Hopkins ("Hopkins") from the May 11, 2004 Order of United States Magistrate Judge Falk denying Plaintiff's motion for appointment of a custodian for Defendant Nightingale and Associates, LLC ("Nightingale"). Plaintiff has twice sought appointment of a custodian. The first application was denied by this Court in December 2002; the second was denied by Judge Falk in the Order that is the subject of this appeal. For the reasons explained herein, the Court will affirm the Order denying

Plaintiff's second application for appointment of a custodian for Nightingale.

## BACKGROUND

In early 2000, Plaintiff, who was then Nightingale's Managing Member, informed Defendants that he wished to retire by December 31, 2002.  Plaintiff stepped down from his role as Managing Member of Nightingale in or around early 2001 (Second Am. Compl. ¶ 18), but remained affiliated with the company. On May 14, 2001, after much negotiation, Plaintiff and Nightingale entered into a retirement agreement.  On that same date, a Second Amended Operating Agreement was memorialized by Nightingale and acknowledged and agreed to by Plaintiff.

In September 2002, Plaintiff expressed his intent "to continue to work full-time for some period after 12/31/02."  (Second Am. Compl., Ex. F.).  Members of Nightingale met with Plaintiff on November 15, 2002 and obtained a requisite vote to provide thirty days' notice to Plaintiff of their intention to determine whether Plaintiff should be removed as a member of Nightingale.

On November 27, 2002, Plaintiff initiated suit against Defendants Dennis J. Duckett, Michael R. D'Appolonia, Kevin I. Dowd, Howard S. Hoffmann, and Nightingale (collectively, "Defendants") by way of an Order to Show Cause. Plaintiff sought restraints against any vote on his removal and the appointment of

a custodian to manage the affairs of Nightingale. By Order dated December 19, 2002, the Court denied Plaintiff's request for temporary restraints, preliminary injunctive relief, and for appointment of a custodian.

Plaintiff later supplemented his allegations, claiming that Defendants did not allow him to participate in new business meetings with clients or to work on projects during 2003, which, in turn, caused him to work and bill less than half of the average number of hours billed by Defendants and earn less than half of the project compensation income that others earned.

On or around September 13, 2003, Plaintiff received from Howard Hoffmann, the managing Member of Nightingale, a notice of a meeting of the Members of Nightingale to be held on September 29, 2003. The stated purpose of the meeting was to vote on giving notice to Plaintiff of the acceptance of his retirement as a Member of Nightingale and to set the effective date of his retirement. Plaintiff took this notice to signal his involuntarily removal from Nightingale. Nightingale voted to accept Plaintiff's retirement, effective October 31, 2003, and Plaintiff was removed as a Member effective November 1, 2003. Nightingale provided Plaintiff with an opportunity to remain associated with Nightingale and continue in the role of an independent contractor, which Plaintiff declined. Defendants contend that Plaintiff also attempted to divert current clients

away from Nightingale.

Plaintiff seeks capital distributions and performance fees for 2003, claiming that there has been no closing of his membership interest in Nightingale and that no payment has been made to him. 3/12/04 Hopkins Cert. ¶ 7. Defendants placed the amount of funds due to Plaintiff, $416,331.86, in an escrow account held by The Honorable Alvin Weiss, A.J.S.C. (retired) as an escrow agent. (Howard S. Hoffman Decl. ¶ 7). Due to Defendants withholding payment of that earned income, Plaintiff was told to expect a 1099 Form reflecting $275,000 more in taxable income than the income he actually received. (Id. ¶ 10).

In January 2004, Plaintiff again sought the appointment of a custodian to manage Nightingale's affairs to the extent necessary to protect the interests of Plaintiff, to examine the facts and, with approval of the Court:

> (a) provide Plaintiff with an accounting of his capital account, distributions and performance fees;
> (b) pay the amount of Plaintiff's capital account to him;
> (c) pay Plaintiff his distribution and performance fees for 2003;
> (d) pay Plaintiff the amount due him from invoices collected by Nightingale; and
> (e) take whatever action is necessary to protect the interests of Plaintiff, including the payment of interest from the date the monies were due to be paid to him.

Magistrate Judge Falk heard argument on Plaintiff's Motion and, by Order dated May 11, 2004, denied same. Judge Falk concluded that Plaintiff had failed to meet

the stringent requirements for appointing a custodian under either Delaware or New Jersey law. (Tr. 28:11-17.). Judge Falk further observed that Plaintiff was not in danger of losing any money on his account, given that the disputed funds had been placed in escrow.

## STANDARD OF REVIEW

The Federal Magistrates Act of 1968 allows district courts to refer certain non-dispositive pretrial matters to a Magistrate Judge for resolution. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A). A district court may reconsider and reverse a Magistrate Judge's decision if it finds the ruling to be "clearly erroneous or contrary to law." See 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A); see also Haines v. Liggett Group, Inc., 975 F.2d 81, 92 (3d Cir.1992). The clearly-erroneous standard is met "when although there is evidence to support [a ruling], the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." United States v. Gypsum Co., 333 U.S. 364, 395 (1948). Accord Haines, 975 F.2d at 92. "A ruling is contrary to law if the Magistrate Judge has misinterpreted or misapplies applicable law." Koch Materials v. Shore Slurry Seal, Inc., 216 F.R.D. 301, 304 (D.N.J. 2003).

However, "[w]here a magistrate judge is authorized to exercise his or her

5

discretion, the decision will be reversed only for an abuse of that discretion." Lithuanian Commerce Corp. Ltd. v. Sara Lee Hosiery, 177 F.R.D. 205, 214 (D.N.J. 1997).

## DISCUSSION

### A.     Timeliness of Appeal

Defendants argue that the Court should not entertain Plaintiff's appeal because it is untimely. The Court disagrees, and will reach the merits of the appeal.

A party may appeal from a decision of a Magistrate Judge in a non-dispositive matter, such as this one, within ten days after being served with a copy of the order. L. Civ. R. 72.1(c)(1)(a). Plaintiff received a copy of Judge Falk's Order by mail postmarked May 18, 2004 and the Notice of Appeal was filed on June 3, 2004. The appeal was timely filed, given that the date of the event from which the time begins to run is not counted (Fed. R. Civ. P. 6(a)); that weekends and legal holidays (including Memorial Day) are excluded from computation when, as here, the time period is less than eleven days (id.); and that three additional days are added when a party is required to take action after service by mail (Fed. R. Civ. P. 6(e)). The Court will thus proceed to the merits of the appeal.

B.  **Applicable Standard of Review**

The parties dispute which standard of review is appropriate. Defendants argue that N.J.S.A. 14A:12-7, which provides that a court "may" appoint a custodian, denotes a discretionary task, and, accordingly, the abuse-of-discretion standard should apply. See also N.J.S.A. 14A:12-7 Commissioners' Comment - 1972 Amendment ("the remedies under this section are discretionary"). Plaintiff contends that the this appeal does not involve the typical discovery or case-management issues such that the exercise of discretion by Judge Falk should be reviewed for abuse of discretion. Rather, the appeal turns on whether Judge Falk properly applied the law (N.J.S.A. 14A:12-7 and relevant case law) in denying Plaintiff's motion for appointment of a custodian for a minority shareholder and, therefore, it must be reviewed under the clearly-erroneous/contrary-to-law standard.

The Court questions whether a determination on appointment of a custodian, albeit ultimately a discretionary call, should be subject to the same standard of appellate review as routine discovery or case management determinations. In any event, appointment of a custodian in this case implicates choice-of-law issues, among other questions of law, that go well beyond discretionary determinations. The Court will review Judge Falk's ruling under the

clearly-erroneous/contrary-to-law standard.

**C.     Magistrate's Order**

It is undisputed that the May 14, 2001 Second Amended Operating Agreement between the parties contains a Delaware choice of law provision. (Second Am. Compl., Ex. E., ¶ 16.12).  Plaintiff nevertheless urges that New Jersey law should govern his request for appointment of a custodian.  First, Plaintiff argues that the choice of law provision is not applicable to the oppression claims that form the basis of his request for appointment of a custodian.  The argument goes that there is nothing in the Operating Agreement concerning oppression of the minority shareholder.  Second, Plaintiff argues that the choice-of-law provision is not enforceable under New Jersey law[1] because the facts of this case are unrelated to the State of Delaware and, to the extent Delaware law would not provide for appointment of a custodian in these circumstances, it is contrary to New Jersey public policy geared to broadening remedies available to oppressed minority shareholders.  See Prudential Ins. Co. of Am. v. Nelson, 11 F. Supp. 2d 572, 578 (D.N.J. 1998) (noting that choice of law provision will not be honored (1) if state law chosen has no substantial relationship to parties or transaction or

---

[1] In diversity cases, a federal court applies the choice-of-law rules of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).

(2) application of state law chosen conflicts with fundamental public policy of state having a greater interest in determination of issue and law of that state would otherwise apply).

The Court agrees with Judge Falk's inclination that Delaware law should govern here.  (Tr. at 28, ll. 15-19) ("The Court is inclined to believe that Delaware law would apply given the clear choice of law provisions; however, I'm not making that finding . . . because it doesn't affect my decision which would be the same under New Jersey or Delaware law.).  The parties freely entered into an Operating Agreement and selected Delaware law to govern all disputes arising therefrom.  The fact that Plaintiff's claims are based on the Operating Agreement is abundantly clear from express statements in the brief, such as "the undisputed evidence demonstrated that defendants: have violated the requirements of the Operating Agreement by not having a closing and paying the plaintiff for the value of his shares in Nightingale." (Pl.'s Br. at 19).  Statements such as that undercut Plaintiff's position that New Jersey law should apply because his oppression claims fall outside the Operating Agreement.

Also, Delaware bears a relationship to Nightingale as a Delaware limited liability company and Plaintiff has not demonstrated how New Jersey has a greater interest in this case than Delaware.  The Court is not persuaded that New Jersey

has a vested interest in this dispute just because, as Plaintiff argues, Nightingale has done past projects[2] (unrelated to this action) in New Jersey and because some invoices due to be paid to Plaintiff happen to involve a bankruptcy case of a New Jersey corporation.  The gravamen of Plaintiff's allegations is not Defendants' conduct or services rendered in New Jersey; rather, it is the management and governance of Nightingale as it relates to Plaintiff.

Delaware law does not expressly provide for appointment of a custodian to relieve minority shareholder oppression:

> In general, there are two bases for the appointment of a custodian: (1) when the stockholder or director deadlock scenarios set forth in 8 Del. C. § 226 occur; or (2) when the managers of the corporation are guilty of fraud, gross mismanagement or creating such extreme circumstances that cause the imminent danger of great loss which cannot otherwise be prevented.

Andreae v. Andreae, Civ. A. No. 11905, 1992 WL 43924, at *9 (Del. Ch. 1992). A strong showing must be made before the Court will appoint a custodian for a solvent corporation. Tansey v. Oil Producing Royalties, Inc., 36 Del. Ch. 472, 478-79 (Del. Ch. 1957).  "The appointment of a statutory custodian is an intrusive remedy that should be resorted to only if the record shows that there is no better

---

[2] Projects that Nightingale has handled in New Jersey include Sunshine Biscuits, Inc., Gitano Group, Inc., Channel Home Centers, Inc., Edrie Communications Corp., Emco, Inc., Halston Borghese, Inc., Heldor Industries, Inc., Home Nutritional Services, Inc., Production Resources Group, Veri-Text Legal Services and Yorx Electronics, Inc. (3/12/04 Hopkins Cert. ¶ 2.).

alternative."  Bentas v. Haseotes, No. 17223, 1999 WL 1022112, at *4 (Del. Ch. 1999).

The Court agrees with Judge Falk's observation that Plaintiff has pointed to no financial distress or that the corporation is in imminent danger, such as would constitute the requisite showing of extreme circumstances justifying appointment of a custodian under Delaware law.  (Tr. 30:15-23.).  The monies Plaintiff seeks have been placed into escrow, a complete accounting of those monies has been provided, (Hoffman Decl. ¶ 7), and there is no indication that the funds are at risk.

Nor is the Court persuaded that Delaware law should not be followed because it violates New Jersey public policy.  While it is true that New Jersey law provides for the discretionary appointment of a custodian on proof that officers or directors "have acted oppressively or unfairly toward one or more minority shareholders," N.J.S.A. 14A:12-7(c), and where it appears to be "in the best interests of the corporation and its shareholders," appointment of a custodian has long been regarded as an extraordinary remedy, see Neff v. Progress Bldg. Materials Co., 139 N.J. Eq. 356, 357 (Ch. Div. 1947).  Custodianship is unnecessary here where Plaintiff's interest in the disputed funds is amply protected by virtue of the escrow account, an accounting of those funds has been provided, and appointment of a custodian would likely hinder Defendants' ability

to conduct their business and serve their clients.

The Court acknowledges Plaintiff's argument that Defendants' withholding of funds in escrow, alone, constitutes oppression, which, in turn, creates a basis for appointment of a custodian under New Jersey law.  First, as already noted, the Court is not inclined to apply New Jersey law.  Second, Defendants have chosen to withhold funds allegedly due to Plaintiff at their own peril.  Resolution of Plaintiff's underlying claims will address whether such withholding was appropriate.  The narrow issue before the Court in this appeal is whether Judge Falk erred in denying Plaintiff's application for appointment of a custodian.  The Court finds no error in Judge Falk's denial of Plaintiff's request for an appointment of a custodian and will affirm the Order embodying same.

Accordingly, **IT IS** on this 26th day of May 2005

**ORDERED** that the May 11, 2004 Order of United States Magistrate Judge Falk denying the application of Plaintiff Stephen J. Hopkins for the appointment of a custodian for Nightingale & Associates LLC is affirmed.

/s/ John C. Lifland, U.S.D.J.